Kenneth A. Scott v. Commissioner.
Scott v. Commissioner
Docket No. 1793-70.
United States Tax Court
T.C. Memo 1972-109; 1972 Tax Ct. Memo LEXIS 148; 31 T.C.M. (CCH) 439; T.C.M. (RIA) 72109; May 10, 1972, Filed. Fred D. Kidder and Scott A. Aiman, for the petitioner. J. Edward Friedland, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioner's income tax and petitioner claimed overpayments herein, as follows: Year
Deficiency
Overpayment
1966
$1,118.00
$2,236.00
1967
1,181.74
2,363.46 The sole issue involved for both years is the extent to which *149 expenses incurred by petitioner in the operation of an office are not allowable as deductions under section 212, [1] by virtue of sections 262 and 265. Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner maintained a residence in an apartment in Cleveland, Ohio, at the time of filing the petition herein. His Federal income tax returns for the calendar years here in question were filed with the district director of internal revenue, Cleveland, Ohio. In addition to his Cleveland apartment, petitioner maintained, during the years in issue, a residence in Ethelsville, Alabama, where he lived from the middle of October to the middle of May, and a residence in Gordon, Wisconsin, where he spent the remainder of the year. In each of the years 1966 and 1967, petitioner travelled to Cleveland, Ohio, during the first week in November and remained there for a week to ten days. Petitioner, who is 80 years old, was a self-employed vessel broker until 1954, when he retired. He *150 has maintained an office in Cleveland, Ohio, since 1922. During the years in issue, petitioner had a single employee in that office, namely, his secretary, one Hazel Nally, who had been in his employ since 1944. Miss Nally worked from 10:00 a.m. to 4:00 p.m. each day, five days a week, except that she took a day off whenever she so desired. She received a month's vacation each year. The total expenses paid and incurred by petitioner to operate and maintain his office during 1966 and 1967 were as follows: 1966
1967
Rent
$3,601.00
$3,749.30
Water cooler
43.00
43.41
Telephone
133.00
134.64
Towel service
35.00
37.35
Stamps
20.00
20.00
Salary (Miss Nally)
3,000.00
3,000.00
Social Security
126.00
132.00
Miscellaneous 26.00
45.32
$6,984.00
$7,162.02
At all times during 1966 and 1967, Central National Bank of Cleveland (hereinafter Central National) held certain stocks and bonds of which petitioner was the beneficial owner under a revocable living trust. Under the trust agreements, the investments of this trust were made and changed by Central National at the direction of petitioner. Central National was entitled to a fee for its services *151 of 5 percent of gross income. None of the trust income was exempt from Federal income tax. The trust income was deposited quarterly in a savings account of petitioner in Central National and a quarterly statement of receipts and disbursements was submitted to petitioner. Central National also maintained records of all trust transactions. As of December 31, 1966 and December 31, 1967, the principal of the trust amounted to $1,151,062.08 and $1,267,072.12, respectively. Petitioner paid fees to Central National of $2,675.00 and $2,889.27 in 1966 and 1967, respectively, which were deducted on his Federal income tax returns for those years. Such deductions are not in issue herein. At all times during 1966 and 1967, the Cleveland Trust Company (hereinafter Cleveland Trust) held certain bonds, the interest from which was exempt from Federal income tax, of which petitioner was the beneficial owner under an Agency arrangement. All investments under that arrangement were made and changed by petitioner. Cleveland Trust was entitled to a fee for its services of 5 percent on the first $10,000 of gross income and 3 percent on the balance. The income from the assets held by Cleveland Trust was *152 remitted to petitioner 441 quarterly, together with a statement of receipts and disbursements. Cleveland Trust also maintained records of all transactions under the arrangement. As of December 31, 1966 and December 31, 1967, the principal of the assets held by Cleveland Trust under the agency arrangement amounted to $2,024,581.44 and $2,023,147.68, respectively. Petitioner paid fees to Cleveland Trust of $2,108 and $2,124 in 1966 and 1967, respectively, which were not deducted on his Federal income tax returns. These amounts are not in issue herein. As of December 31, 1966 and December 31, 1967, stocks and securities held directly by petitioner were worth approximately $668,000 and $815,000, respectively. None of the income in respect of the securities was exempt from Federal income tax. Petitioner also maintained bank savings accounts. The total income derived by petitioner during each of the years in issue was approximately as follows: Income
1966
1967
Agency (Cleveland Trust)
$ 63,611
$ 64,139
Trust (Central National)
53,507
57,766
Stocks (held directly)
36,536
38,449
Interest (taxable)
16,619
18,681
Taxable gains 1,320
[2] 0
$171,593
$179,035
*153 The function of petitioner's Cleveland office and of Miss Nally can be summarized as follows: (a) Receipt and maintenance of the quarterly statements from Central National and Cleveland Trust. Miss Nally recorded the information therein on ledger sheets which were maintained to reflect petitioner's investments. (b) Receipt of the remittance of income in respect of petitioner's securities (other than that credited directly by Central National) and deposit thereof in petitioner's savings account. (c) Receipt of occasional inquiries from Central National and Cleveland Trust relating to petitioner's investments maintained by them. These inquiries were forwarded by Miss Nally to petitioner, who replied to them directly. (d) Receipt of proxy and other investor material which Miss Nally forwarded to petitioner. (e) *154 Maintenance of two checking accounts of petitioner in Central National and Cleveland Trust. The former was a so-called business account from which the expenses of petitioner's Cleveland office were paid and the latter a personal account from which certain personal expenses of petitioner were paid. Miss Nally arranged for petitioner periodically to replenish these accounts, maintained the checkbooks, reconciled them monthly, and drew certain checks on them which she sent to petitioner, who signed them and returned them to her for distribution to the payees. During 1966 and 1967, Miss Nally wrote 68 and 71 checks, respectively, on the Central National account and 81 and 82 checks, respectively, on the Cleveland Trust account. (f) Miss Nally maintained and furnished to the preparer thereof all the information required for petitioner's income tax and personal property tax returns, with the exception of petitioner's Cleveland City income tax return and his Social Security tax returns, which she prepared herself. Petitioner deducted, in each of the years in question, an amount equal to 50 percent of the expenses of the Cleveland office in those years. Respondent allowed only amounts *155 equal to 25 percent thereof. Petitioner disputes respondent's disallowance and claims an overpayment on the ground that the entire amount of such expenses is deductible. It is obvious that there is no argument that a portion of the petitioner's expenses in respect of his Cleveland office is deductible. The only question before us is one of fact, namely, how large that portion should be. We see no purpose in engaging in a detailed analysis of the underlying facts. We find that 50 percent of such expenses constitute expenses for the production of income within the meaning of section 212. We therefore hold that petitioner is entitled to deductions in the amounts as reflected in his Federal income tax returns as filed. We have arrived at our conclusion herein independently on the basis of the entire record and have not given any weight whatsoever to the evidence submitted that the 50-percent formula utilized by petitioner on his returns was based upon the results of an audit of petitioner's 1955 and 1956 442 Federal income tax returns and confirmed upon audit of his 1963 return. Clearly, neither petitioner nor respondent is bound thereby. On the other hand, we are constrained to *156 observe that respondent could make better use of his time in not secondguessing himself in such situations (particularly where it appears, as is the case herein, that there was no change in circumstances during the intervening years), thereby avoiding the temptation on the part of petitioner to seek a bigger bite of the apple. Certainly, the efforts expended by the parties and the Court herein were totally disproportionate to any requirement of justice that the issue herein be resolved by litigation. In order to reflect petitioner's concession in his reply brief (see footnote 2, supra), Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. In his reply brief, petitioner indicates that he had recently discovered that he failed to report, in his 1967 return, a long-term capital gain in the sum of $1,152.50 which he realized in that year. Petitioner asks that this omission be taken into account under the Rule 50 computation, even though respondent did not raise the issue in his statutory notice.↩